UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
                                               :
893 4TH AVE LOFTS LLC,                         :    Case No. 21-41367-JMM
                                               :
                                               :
                     Debtor.                   :
-----------------------------------------------------------x
```

## SECOND AMENDED CHAPTER 11 LIQUIDATING PLAN FOR 893 4TH AVE. LOFTS LLC FILED BY 893 4TH AVE LOFTS LLC AND 5 AIF SYCAMORE 2, LLC

893 4th Ave. Lofts, LLC and 5 AIF Sycamore 2, LLC hereby propose the following Chapter 11 Joint Liquidating Plan for 893 4th Ave Lofts LLC pursuant to § 1121(c) of the Bankruptcy Code.

## ARTICLE I

## Definitions

The following terms shall have the respective meanings set forth below. Unless otherwise indicated, the singular shall include the plural. Any term not defined herein which is defined by the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.

1.1    "Administrative Claim" means a claim which is not a secured claim, accruing from and after the Filing Date, including the fees and expenses of professional persons retained or to be compensated pursuant to the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate under Chapter 123, title 28, of the United States Code.

1.2    "Administrative/Priority Reserve" means the reserve for the payment of Allowed Administrative Claims and Allowed Priority Claims to be funded by the Secured Lender pursuant to § 7.12 of the Plan.

1.3     "Allowed Best Super Cleaning LLC Mechanic's Lien Claim" means the Allowed Mechanics Lien Claim of Best Super Cleaning LLC.

1.4     "Allowed Claim" means a claim which is scheduled pursuant to § 521(1) of the Bankruptcy Code, other than a claim scheduled as disputed, contingent or unliquidated, or a claim which has been filed pursuant to § 501(a) of the Bankruptcy Code, and with respect to which no objection to the allowance thereof has been interposed within the period of limitation fixed by the Bankruptcy Court, or as to which any objection has been overruled (and to the extent so overruled) by the Bankruptcy Court; provided, however, that except as otherwise set forth in this Plan, interest accrued after the Filing Date shall not be part of any Allowed Claim.

1.5     "Allowed ECB Judgment Lien Claim" means the Allowed Claim of the New York City Environmental Control Board relating to judgments it has obtained against the Debtor, to the extent such judgment constitute a lien on the Property.

1.6     "Allowed General Unsecured Claim" means an Allowed Claim which is not entitled to priority under § 507(a) of the Bankruptcy Code and which is not secured by a valid, perfected security interest or lien and including an Allowed Claim, if any, arising from the rejection of an executory contract.

1.7     "Allowed Home Core Inc. Mechanic's Lien Claim" means the Allowed Mechanics Lien Claim of Home Core, Inc.

1.8     "Allowed Priority Claim" means the portion of an Allowed Claim entitled to priority under § 507(a) of the Bankruptcy Code.

1.9     "Allowed 5 AIF Nutmeg, LLC" means the Allowed Secured Claim of 5 AIF Nutmeg, LLC and any assignee thereof.

1.10    "Allowed Secured Lender Claim" means the Allowed Secured Claim of the Secured Lender and any assignee thereof.

1.11    "Allowed Secured Tax Claim" means the Allowed Claim of the New York City Department of Finance for real estate taxes on the Property to the extent such claim constitutes a lien on the Property.

1.12    "Allowed Silvercup Scaffolding LLC Mechanic's Lien Claim" means the Allowed Mechanics Lien Claim of Silvercup Scaffolding LLC.

1.13    "Auction" means the auction sale of the Property to take place pursuant to Article VII of the Plan.

1.14    "Auction Date" shall have the meaning ascribed to such term in § 7.2 of the Plan.

1.15    "Back Up Bidder" shall have the meaning ascribed to such term in § 7.10(g) of the Plan.

1.16    "Bankruptcy Case" shall mean the above-captioned Chapter 11 case commenced by the Debtor on the Filing Date before the Bankruptcy Court (Case No. 21-41367-JMM).

1.17    "Bankruptcy Code" means Title 11, United States Bankruptcy Code, 101 *et seq.,* commonly referred to as the Bankruptcy Code.

1.18    "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of New York or such other court as may have jurisdiction over the Debtor's Chapter 11 case.

1.19    "Business Day" means any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.20    "Charges" shall have the meaning ascribed to such term in § 7.4 of the Plan.

3

1.21    "Claim" means a claim against the Debtor as defined in § 101(5) of the Bankruptcy Code.

1.22    "Claim Resolution Date" is ten (10) days after the date upon which all General Unsecured Claims have been either allowed, reclassified, reduced or disallowed by Final Order.

1.23    "Class" means a group of claims or interests, consisting of Claims or Interests which are substantially similar to each other, as classified pursuant to the Plan.

1.24    "Closing Date" shall have the meaning ascribed to such term in § 7.10(j) of the Plan.

1.25    "Confirmation Date" means the date of the order of the Bankruptcy Court confirming the Plan.

1.26    "Confirmation Order" means the order of the Bankruptcy Court approving the Plan and under and pursuant to § 1129 of the Bankruptcy Code and related sections thereof.

1.27    "Debtor" means 893 4th Ave Lofts LLC, the above-captioned Chapter 11 debtor.

1.28    "Deposit" shall have the meaning ascribed to it in § 7.9(b) of the Plan.

1.29    "Disbursing Agent" means Vincent M. Lentini, Esq.

1.30    "Disputed Claim" means any claim listed on the Debtor's Schedules as disputed or as to which an objection to the allowance thereof has been interposed and not determined by a Final Order pursuant to Section 6.1 of this Plan,

1.31    "Effective Date" means three (3) Business Days subsequent to the Closing of the Sale of the Properties.

1.32    "Entity" shall have the meaning set forth in § 101(15) of the Bankruptcy Code.

1.33    "Filing Date" means May 24, 2021, the date on which the Debtor filed its Chapter 11 petition.

4

1.34    "Final Order" means an order or a judgment which has not been reversed or stayed and as to which (i) the time to appeal or to seek review, rehearing or certiorari has expired pursuant to Rule 8002 of the Bankruptcy Rules and (ii) no appeal or petition for review, rehearing or certiorari is pending.

1.35    "Financial Evidence" shall have the meaning ascribed to such terms in § 7.9(c) of the Plan.

1.36    "Impaired" when used with respect to any Claim, Interest or Class, has the same meaning as that contained in § 1124 of the Bankruptcy Code.

1.37    "Initial Auction Bid" shall have the meaning ascribed to such term in § 7.10(c) of the Plan.

1.38    "Initial Bid Deadline" shall have the meaning ascribed to such term in § 7.8 of the Plan.

1.39    "Interests" means the rights of the equity security holders in the Debtor.

1.40    "Mechanic's Lien Claim" shall mean a claim against the Debtor arising from a mechanic's lien filed against the Property.

1.41    "Mechanic's Lien Reserve" shall mean the reserve for the payment of Allowed Mechanic's Lien Claims to be funded by the Secured Lender pursuant to § 7.12 of the Plan.

1.42    "Non-Professional Administrative Claims" means Administrative Claims which are not Professional Administrative Claims.

1.43    "Notice of Sale" means that notice of sale annexed to the Plan as Exhibit 1.

1.44    "Qualified Bid" shall have the meaning ascribed to such term in § 7.7 of the Plan.

1.45    "Qualified Bidder" shall have the meaning ascribed to such term in §§ 7.7 and 7.9 of the Plan.

5

1.46    "Plan" means this plan of reorganization, and all exhibits hereto, as the same may be modified or amended from time to time as and to the extent permitted herein or by the Bankruptcy Code.

1.47    "Priority Claim" means a claim entitled to priority in repayment pursuant to § 507(a) of the Bankruptcy Code.

1.48    "Professional" means a person retained by order of the Court pursuant to § 327 of the Bankruptcy Code and whose compensation is governed by § 330 of the Bankruptcy Code.

1.49    "Professional Administrative Claims" means those Administrative Claims held by Professionals.

1.50    "Property" means the real property and buildings and improvements thereon located at 893 Fourth Avenue, Brooklyn, New York.

1.51    "Purchase Agreement" shall have the meaning ascribed to such term under § 7.9(a) of the Plan.

1.52    "Sale" means the sale of the Property pursuant to the Plan.

1.53    "Schedules" means the schedules of assets and liabilities in accordance with Bankruptcy Rule 1007(b), filed by the Debtor with the Bankruptcy Court (as they may be amended from time to time in accordance with Bankruptcy Rule 1009).

1.54    "Secured Claim" means a Claim which is secured by a valid, perfected and enforceable lien on one or both of the Parcels, to the extent of the value of the interest of the holder of such Secured Claim in such property as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code.

1.55    "Secured Lender" means 5 AIF Sycamore 2, LLC.

6

1.56    "Successful Bid" shall have the meaning ascribed to such term in § 7.10(h) of the Plan.

1.57    "Successful Bidder" shall have the meaning ascribed to such term in § 7.10(f) of the Plan..

1.58    "Unsecured Claim Reserve" means $25,000 reserve for the payment of Allowed General Unsecured Claims which shall be funded by the Secured Lender to the Disbursing Agent pursuant to § 7.12 of the Plan.

## ARTICLE II

### Treatment Of Administrative And Priority Claims

2.1    With respect to Priority Claims and Non-Professional Administrative Claims, the Disbursing Agent shall pay such Allowed Claims on the Effective Date from the proceeds from the Sale of the Property, if any, remaining after the payment of the Allowed Class 1 Claim and Allowed Class 2 Claim; provided that if the proceeds from the Sale of the Property are insufficient to pay one hundred percent (100%) of the Allowed Priority Claims And Allowed Non-Professional Administrative Claims in full, then on the Effective Date, the Disbursing Agent shall pay to the holders of Priority Claims and Non-Professional Administrative Claims from the Administrative/Priority Reserve such amount as is necessary to result in the payment of one hundred percent (100%) of the Priority Claims and Administrative Non-Professional Administrative Claims.

2.2    With respect to Administrative Claims of Professionals, the Disbursing Agent shall pay such Allowed Claims in full from the Sale of the Property, if any, remaining after the payment of the Allowed Class 1 Claim and Allowed Class 2 Claim and the funds, and if such funds are insufficient to pay the Allowed Professional Administrative Claims in full, then from the funds in the Administrative/Priority Claim Reserve on the later of: (i) the Effective Date; or (ii) entry of an

7

order of the Court approving the fees and expenses of such Professional pursuant to section 330 of the Bankruptcy Code.

## ARTICLE III

### Designation of Claims and Interests

The following Classes of Claims and Interests are designated pursuant to and in accordance with § 1123(a)(1) of the Bankruptcy Code:

3.1    "Class 1 Claim" shall consist of the Allowed Secured Tax Claim.

3.2    "Class 2 Claim" shall consist of the Allowed ECB Judgment Lien Claim.

3.3    "Class 3 Claim" shall consist of the Allowed Secured Lender Claim.

3.4    "Class 4 Claim" shall consist of the Allowed 5 AIF Nutmeg, LLC Secured Claim.

3.5    "Class 5 Claim" shall consist of the Allowed Home Core Inc. Mechanic's Lien Claim.

3.6    "Class 6 Claim" shall consist of the Allowed Best Super Cleaning LLC Mechanic's Lien Claim.

3.7    "Class 7 Claim" shall consist of the Allowed Silvercup Scaffolding LLC Mechanic's Lien Claim.

3.8    "Class 8 Claims" shall consist of the Allowed General Unsecured Claims against the Debtor.

3.9    "Class 9 Interest" shall consist of the Interests in the Debtor.

## ARTICLE IV

### Claims and Interests Impaired Under the Plan

4.1    The Class 3 Claim, Class 4 Claim, Class 5 Claim, Class 6 Claim, Class 7 Claims and Class 8 Claims, and Class 9 Interest are Impaired under the Plan and are entitled to vote on the Plan.  The Class 1 Claim and Class 2 Claim are not Impaired under the Plan, are not entitled

8

to vote on the Plan and are conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code.

**ARTICLE V**

**Treatment of and Methods of
Distribution to Classes Under the Plan**

5.1     <u>Class 1 Claim.</u> On the Effective Date, the Disbursing Agent shall pay the proceeds from the Sale of the Property to the holder of the Allowed Class 1 Claim up to one hundred percent (100%) of the Allowed Class 1 Claim; provided, however that if the Secured Lender is the purchaser of the Property at the Sale, then the Secured Lender shall pay one hundred percent (100%) of the Allowed Class 1 Claim at the Closing of the Sale of the Property.

5.2     <u>Class 2 Claim</u>. On the Effective Date, the Disbursing Agent shall pay the proceeds from the Sale of the Property to the holder of the Allowed Class 2 Claim up to one hundred percent (100%) of the Allowed Class 2 Claim; provided, however that if the Secured Lender is the purchaser of the Property at the Sale, then the Secured Lender shall pay one hundred percent (100%) of the Allowed Class 2 Claim at the Closing of the Sale of the Property.

5.3     <u>Class 3 Claim.</u> The Class 3 Claim is fixed and allowed in the amount of $4,140,847.71 as of the Filing Date.  The Class 3 Claim shall also be deemed to include fees and expenses, including attorneys' fees and expenses incurred by the Secured Lender subsequent to the Filing Date, plus, to the extent that the value of the Property exceeds the amount of the Allowed Class 3 Claim, interest at the default rate under the Loan Documents.  On the Effective Date, the Disbursing Agent shall pay the proceeds from the Sale of the Property, if any, remaining after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim and Allowed Class 3 Claim to the holder of the Allowed Class 3 Claim up to one hundred percent (100%) of its Allowed Secured Claim.  If the Secured Lender is the purchaser of the

9

Property at the Sale, then the Allowed Class 3 Claim shall be deemed paid to the extent of any credit bid made by the Secured Lender.

5.4     <u>Class 4 Claim.</u> On the Effective Date, the Disbursing Agent shall pay the proceeds from the Sale of the Property, if any, remaining after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim and Allowed Class 3 Claim to the holder of the Allowed Class 4 Claim up to one hundred percent (100%) of its Allowed Secured Claim.  If 5 AIF Nutmeg, LLC is the purchaser of the Property at the Sale, then the Allowed Class 4 Claim shall be deemed paid to the extent of any credit bid made by 5 AIF Nutmeg, LLC.

5.5     <u>Class 5 Claim</u>.  On the Effective Date, and after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim, Allowed Class 3 Claim and Allowed Class 4 Claim in full, the Disbursing Agent shall pay the remaining proceeds, if any, from the Sale of the Property to the holder of the Allowed Class 5 Claim up to one hundred percent (100%) of its Allowed Claim; provided however, that if the amount of proceeds from the sale of the Property are insufficient to pay ninety percent (90%) of the Allowed Class 5 Claim, then on the Effective Date, the Disbursing Agent shall pay to the holder of the Allowed Class 5 Claim from the Mechanics Lien Reserve, such amount as is necessary to result in the holder of the Class 5 Claim receiving a 90% distribution on its Allowed Claim.

5.6     <u>Class 6 Claim</u>.  On the Effective Date, and after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim, Class 3 Claim, Class 4 Claim, and Class 5 Claim in full, the Disbursing Agent shall pay the remaining proceeds, if any, from the Sale of the Property to the holder of the Allowed Class 6 Claim up to one hundred percent (100%) of its Allowed Claim; provided however, that if the

amount of proceeds from the sale of the Property are insufficient to pay ninety percent (90%) of the Allowed Class 6 Claim, then on the Effective Date, the Disbursing Agent shall pay to the holder of the Allowed Class 6 Claim from the Mechanics Lien Reserve, such amount as is necessary to result in the holder of the Class 6 Claim receiving a 90% distribution on its Allowed Claim.

5.7    <u>Class 7 Claim</u>.   On the Effective Date, and after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim, Allowed Class 3 Claim, Allowed Class 4 Claim, Allowed Class 5 Claim and Allowed Class 6 Claim in full, the Disbursing Agent shall pay the remaining proceeds, if any, from the Sale of the Property to the holder of the Allowed Class 7 Claim up to one hundred percent (100%) of its Allowed Claim; provided however, that if the amount of proceeds from the Sale of the Property are insufficient to pay ninety percent (90%) of the Allowed Class 7 Claim, then on the Effective Date, the Disbursing Agent shall pay to the holder of the Allowed Class 7 Claim from the Mechanics Lien Reserve, such amount as is necessary to result in the holder of the Class 7 Claim receiving a 90% distribution on its Allowed Claim.

5.8    <u>Class 8 Claims</u>.   On the Claim Resolution Date, and after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim, Allowed Class 3 Claim, Allowed Class 4 Claim, Allowed Class 5 Claims, Allowed Class 6 Claims, and Allowed Class 7 Claims in full, the Disbursing Agent shall pay the remaining proceeds, if any, from the Sale of the Property to the holders of the Allowed Class 8 Claims on a pro-rata basis up to one hundred percent (100%) of their Allowed Claims; provided however, that if the amount of proceeds from the Sale of the Property are insufficient to pay the Allowed Class 8 Claims in full, then ten (10) Business Days after the Claim Resolution Date, the Disbursing Agent shall pay a pro-rata share of the funds in the Unsecured Claim Reserve to the holders of the

11

Allowed Class 8 Claims, provided that the total amount of distribution to holders of Allowed Class 8 Claims shall not exceed one hundred percent (100%) of their Allowed Claims.

5.9    <u>Class 9 Interest.</u>  The holder of Class 9 Interest shall retain its Interest in the Debtor. On the Effective Date, and after the payment of the Allowed Administrative Claims, Allowed Priority Claims, Allowed Class 1 Claim, Allowed Class 2 Claim, Class 3 Claim, Allowed Class 4 Claim, Allowed Class 5 Claim, Allowed Class 6 Claim, Allowed Class 7 Claim, and Allowed Class 8 Claims in full, the Disbursing Agent shall pay the remaining proceeds, if any, from the Sale of the Property to the holder of the Allowed Class 9 Interest.

## ARTICLE VI

### Provisions as to Disputed Claims and Distributions

6.1.    <u>Disputed Claims.</u> In connection with Cash distributions to be made in respect of Allowed Claims, there shall be reserved from any distribution to the holder of a Disputed Claim the amount of Cash which then otherwise would be paid in respect to such Disputed Claim on the Effective Date if the full amount of such Claim were deemed to be an Allowed Claim or such lesser amount as the Bankruptcy Court may determine.  Pending the determination of such claim by the Bankruptcy Court, an amount of Cash equal to the amount so reserved or such lesser amount as the Bankruptcy Court may have determined shall be deposited into the Disbursing Account within fifteen (15) business days after the date on which such amount would otherwise be distributed to such claimant and held as long as such claim remains a Disputed Claim. Upon such Claim becoming an Allowed Claim, any distribution then due to be made in respect of such claim shall be paid within seven (7) business days thereafter in accordance with the provisions hereof and of such order of the Bankruptcy Court. Any monies remaining on deposit with respect to any Disputed Claim after its resolution or determination by the Bankruptcy Court shall be returned to the Disbursing Account and distributed pursuant to the terms of the Plan.

6.2.    Notwithstanding anything to the contrary herein, no objections may be filed to the claim of the Secured Lender is fixed and allowed as provided in Section 5.3 of the Plan.

## ARTICLE VII

## Means for Execution of the Plan

7.1    Means for Implementation. The funds required for the confirmation and performance of this Plan shall be provided from: (i) the proceeds from the Sale of the Property pursuant to the Auction to be conduct pursuant to Article VII of the Plan; and (ii) moneys to be contributed by the Secured Lender to the Administrative/Priority Reserve, the Mechanics Lien Reserve, and the Unsecured Claims Reserve.

7.2    The Auction. The Disbursing Agent will cause the Property to be sold at a public auction to be held at 10:00 a.m. (Eastern Time) on or about February 15, 2022 (the "Auction Date") either at the at the Law Offices of Vincent Lentini, 1129 Northern Blvd., Suite 404, Manhasset, New York 11030, or at the option of the Debtor, by webex, Zoom or other streaming video service. The Auction will be conducted in accordance with the provisions of Article VII of the Plan.  The Debtor may adjourn the Auction Date for up to thirty (30) days provided it receives the written consent of the Secured Lender.  In the event of an adjournment of the Auction Date, notice of the adjournment shall be filed with the Bankruptcy Court by the Debtor or Secured Lender, and notice of such adjournment shall be served via email upon Qualified Bidders.  No further notice of the adjournment of the Auction Date shall be required, and publication of the notice of adjournment of the Auction Date shall not be required.

7.3    Publication of Notice.  For three successive weeks prior to the Auction Date, the Debtor shall cause a Notice Of Sale in the form annexed to the Plan as Exhibit 1 to be published in the Brooklyn Eagle and New York Post. The cost of such advertisement shall be paid by the

13

Secured Lender, and shall be added to the amount of the Allowed Class 3 Claim.  The Debtor shall also file a copy of the Notice of Sale on the docket of the Debtor's Bankruptcy Case.

7.4    <u>Outstanding Taxes</u>.  The Successful Bidder at the Auction shall be required at the Closing to pay all outstanding taxes constituting a lien on the Property (including without limitation county and local real estate taxes, school taxes and any special district taxes or charges), unpaid water and sewer charges and any other charges owed to any governmental entity or unit which are a lien or charge on the Parcel(s), (such taxes and water and sewer and other charges shall hereafter be referred to as the "Charges"). Bids submitted for the Property shall not include amounts due for the Charges. The Charges due on the Property to be paid by the Successful Bidder are in addition to the amount of its successful bid.

7.5    <u>Free and Clear Sale</u>. The Property shall be sold free and clear of all liens, claims and encumbrances pursuant to Bankruptcy Code § 363(f), which liens, claims and encumbrances shall upon closing attach to the proceeds of the Sale in the same order of priority that currently exist on the Property.

7.6    <u>"As Is Where Is"</u>.  The Sale of the Property at the Auction is without representation or warranties of any kind, nature or description by the Debtor.  The Property shall be transferred "as is," "where is" and "with all faults."   ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IS EXPRESSLY DISCLAIMED AND THERE SHALL BE NO WARRANTY, EXPRESS OR IMPLIED, AS TO THE NATURE, QUALITY, VALUE OR CONDITION OF THE PROPERTY OF ANY PORTION THEREOF.  Each bidder for the Property will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding the Property prior to making its bid; (b) has relied solely upon its own independent review, investigation, and inspection of any documents and/or the Property in

making its bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Property, or the completeness of any information provided in connection with the Sale or the Auction.

7.7     Qualified Bidders and Qualified Bids.    Except for the Secured Lender, any prospective bidder wishing to bid for the Property at the Auction must have first submitted an initial, qualified bid ("Qualified Bid") satisfying the requirements of § 7.9 of the Plan.  All bidders who submit a Qualified Bid in accordance with the procedures specified in the Plan and the Secured Lender are each a "Qualified Bidder."

7.8     Initial Bid Deadline.  Except for the Secured Lender to become a Qualified Bidder, a prospective bidder must submit a Qualified Bid in writing so that it is received by the Disbursing Agent, by hard copy or by email, on or before 5:00 pm (Eastern Time) on the later of February 15, 2022 or seven days prior to the Auction Date. (the "Initial Bid Deadline").

7.9     Requirements for a Qualified Bid.    Each prospective bidder, by submitting a Qualified Bid, shall be deemed to acknowledge that it understands and is bound by the terms of the Auction procedures set forth in Article VII of the Plan.  To be designated a Qualified Bid, a bid must be submitted prior to the Initial Bid Deadline and must satisfy the following requirements:

(a)     The bid must be submitted in the form of an executed Purchase and Sale Agreement in the form annexed hereto as Exhibit 2, executed by a duly authorized officer of the prospective bidder (the "Purchase Agreement").

(b)     Except for the Secured Lender, the bid must be accompanied by a ten percent (10%) deposit to the Disbursing Agent by wire transfer (the "Deposit") in accordance with the wiring instructions provided by the Disbursing Agent.  Each Deposit shall be held by the Disbursing Agent in a non-interest bearing account.  The Secured Lender shall not be required to submit a Deposit.  The Deposits of prospective bidders, other than the Successful Bidder and the Back-Up Bidder (as hereafter defined), shall be returned in accordance with 7.10(k) of the Plan.

15

(c)     At or prior to the Initial Bid Deadline, the bidder must provide written evidence of an irrevocable commitment for financing, without any contingency, or other satisfactory written evidence that the prospective bidder has the financial ability to close the transaction contemplated in the Qualified Bid and to pay the proposed purchase price in available funds no later than the Closing Date as defined below (the "<u>Financial Evidence</u>").

(d)     The bid must be accompanied by a board resolution, written consent, or other similar document demonstrating the authority of the bidder to submit, execute, deliver and close the proposed sale transaction.

(e)     The bid must include an acknowledgement and representation that the prospective bidder: (i) will complete any and all due diligence regarding the Property prior to the Auction; (ii) will waive all contingencies of its bid at or prior to the Auction, (iii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (iv) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Purchase Agreement.

(f)     All prospective bidders and Qualified Bidders shall bear their own costs and expenses.

(g)     Subparagraphs (a) through (f) shall not apply to the Secured Lender, who shall conclusively be deemed to be a Qualified Bidder and who shall have the right pursuant to Bankruptcy Code § 363(k) to credit bid at the Auction the full amount of its claim.

(h)     After review of these documents, the Debtor will determine whether a party submitting a bid: (i) has demonstrated the financial capacity to consummate the proposed purchase of the Property, (ii) is reasonably likely to consummate the contemplated transaction if selected as the Buyer, and (iii) has otherwise satisfied the requirements described above, so as to render the prospective bidder a Qualified Bidder.  The Debtor shall share information received from prospective bidders with the Secured Lender.

7.10     <u>Auction Procedures</u>.  If there are two or more Qualified Bidders, the Disbursing Agent shall conduct the Auction in any reasonable manner that is not inconsistent with these Auction procedures, and that provides Qualified Bidders with a fair opportunity to participate, subject to the requirements set forth below.

(a)     Qualified Bidders that submit a Deposit and the Secured Lender will be the only parties permitted to bid at the Auction.

#152450002_v1

(b)     The Agent will notify all prospective bidders by email whether or not they are deemed to be Qualified Bidders at least two (2) business days prior to the Auction.

(c)     The highest and best bid (or credit bid, in the case of the Secured Lender) received for the Property will be the "Initial Auction Bid." The Agent will announce the Initial Auction Bid to the Debtor, the Secured Lender  and all Qualified Bidders at least two (2) business days prior to the Auction.

(d)     Each Qualified Bidder must appear at the Auction through a duly authorized representative.  After the announcement of the Initial Auction Bid, the Disbursing Agent will request additional bidding at the Auction.

(e)     A Qualified Bidder, including the Secured Lender, may increase its bid as many times as it chooses, provided that each subsequent bid must exceed the prior bid, including the Initial Auction Bid, by at least $25,000.

(f)     The Auction shall continue until a successful bidder (the "Successful Bidder") has been determined by the Debtor.

(g)     As a condition to qualifying to participate in the Auction, each Qualified Bidder shall be deemed to have consented to serve as a back-up bidder (the  "Back-Up Bidder").  The party with the next highest bid after the Successful Bidder at the Auction shall be required to serve as the Back-up Bidder, and such bid is to remain open for acceptance by the Debtor and consummation by the parties up to and including ten (10) business days following the scheduled Closing Date; provided, however, that nothing else herein shall be deemed to modify or otherwise alter any provision in the Purchase Agreement.

(h)     Prior to the conclusion of the Auction, or as soon thereafter as practicable, the Debtor will: (i) review each Qualified Bid, and consider each Qualified Bidder, on the basis, without limitation, of the amount of the purchase price, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, and the certainty of the financing, (ii) identify the highest and best bid for the Property received at the Auction (the "Successful Bid"), (iii) designate the party or parties that submitted the Successful Bid as the buyer, and (iv) identify the Back-Up Bidder.  Upon the designation of the Successful Bid,  the Successful Bidder and the Back-Up Bidder shall initial, or otherwise confirm, appropriate changes or modifications to the Purchase Agreement submitted with their Qualified Bid to reflect the terms of their prevailing or back-up bids, as applicable.  Upon the completion of such confirmation to the satisfaction of the Secured Lender, the Auction shall be concluded and no further bids shall be considered.

(i)     On the Auction Date, the Secured Lender will file a notice with the Court indicating whether the Auction was held and, identifying the Successful Bidder  and the Back-Up Bidder.

#152450002_v1

(j)    The Successful Bidder shall close on its Successful Bid no later than fourteen (14) days after the Auction, time being of the essence, unless extended pursuant to a writing signed by both the Debtor and Secured Lender (the "Closing Date").

(k)    Except as otherwise provided herein, all Deposits shall be returned to each bidder not selected as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) day following the conclusion of the Auction.  If the Successful Bidder closes the sale of the Property, the Deposit of the Back-Up Bidder shall be returned by the Disbursing Agent to the Back-Up Bidder within ten (10) days after the Closing.  If the Successful Bidder fails to close the purchase and sale of the Property by the scheduled Closing Date (as it may be extended by written agreement between the Debtor and the Successful Bidder), then the Back-Up Bidder shall close on the purchase and sale of the Property on a Closing Date that is no later than ten (10) days after it has been informed by email by the Debtor that the Successful Bidder has failed to close on the scheduled Closing Date (subject to further extension by written agreement between the Back-Up Bidder and the Debtor), time being of the essence.  If the Successful Bidder (or the Back-Up Bidder, as applicable) fails to close on the applicable Closing Date or otherwise defaults under its Purchase Agreement, the Disbursing Agent shall transfer the Deposit to Secured Lender who will be entitled to retain the Deposit as liquidated damages.

(l)    All liens and encumbrances upon the Property shall remain in effect until the Closing of the Sale, and at Closing shall be transferred and attached to the proceeds of the Sale in the same extent and priority that existed immediately before the Closing.

(m)    If there are no Qualified Bidders other than the Secured Lender, then the Secured Lender shall be deemed to be the Successful Bidder, the Auction will not be conducted, and the Disbursing Agent shall file a notice with the Court identifying the Secured Lender as the Successful Bidder.

7.11    Unless an order of the Bankruptcy Court has been entered to the contrary by the seventh day after the Auction Date, the Successful Bidder at the Auction, the Back-Up Bidder, and/or the Secured Lender shall be conclusively deemed a good faith purchaser for value and entitled to the protections of § 363 (m) of the Bankruptcy Code.

7.12    Funding of Reserves.  No later than three Business Days prior to the Effective Date, the Secured Lender shall pay the following amounts to the Disbursing Agent to fund  the following

reserves, which shall be maintained by the Disbursing Agent in his IOLTA account:

| Reserve | Amount To Be Funded |
|---|---|
| Administrative/Priority Reserve | Such amount as is necessary to pay all Administrative Claims and Priority Claims in full |
| Mechanic's Lien Reserve | Such amount as is necessary to pay 90% of the Allowed Class 5 Claim, Allows Class 6 Claim and Allowed Class 7 Claim |
| Unsecured Claim Reserve | $25,000 |

7.13    <u>Return of Excess Reserve Funds</u>.  The Disbursing Agent shall refund to the Secured Lender, all funds remaining in the Administrative/Priority Reserve, Mechanic's Lien Reserve and Unsecured Claim Reserve after the payment of all distributions under the Plan.

## ARTICLE VIII

### Executory Contracts

8.1    Any and all executory contracts and leases of the Debtor shall be deemed rejected as of the Effective Date unless assumed, or assumed and assigned pursuant to an order of the Bankruptcy Court.

8.2    Any Entity whose Claim arises from rejection of an Executory Contract or unexpired lease shall, to the extent such Claim becomes an Allowed Claim, have the rights of the holder of a Class 8 Claim with respect thereto.

8.3    Any Entity who has a Claim against the Debtor by virtue of rejection of an executory contract or unexpired lease may file a Claim with the Clerk of the Court, and serve such claim upon the Debtor and Disbursing Agent, within twenty days (20) days following service upon such Entity of notice of entry of the order confirming the Plan or order authorizing such rejection whichever is later. If such Claim is not filed within such specified time, it shall forever be barred

from assertion against the Debtor's estate. Notwithstanding anything to the contrary contained in this Plan, the Debtor shall have thirty (30) days after the filing of such claim to file an objection to such claim.

## ARTICLE IX

### Conditions Precedent; Effective Date

9.1     The following shall be conditions precedent to the Effective Date of the Plan:

(a)     The entry of the Confirmation Order; and

(b)     The Closing of the Sale of the Properties.

## ARTICLE X

### Releases And Pending Litigation Against The Secured Lender

10.1     As consideration for its funding of the Administrative/Priority Reserve, Mechanics' Lien Reserve and Unsecured Claim Reserve, under the Plan, the Debtor shall be deemed to have hereby irrevocably, absolutely and unconditionally released, remised, and forever discharged the Secured Lender and its partners, members, officers, directors, managers, shareholders, employees, agents, representatives, attorneys, and other professionals, solely in their respective capacities as such, from any and all past, existing or future claims and causes of action held by the Debtor, of any type whatsoever, whether known or unknown, asserted or unasserted, arising prior to the date hereof

10.2     Within five (5) business days after entry of the Confirmation Order, the Debtor shall: (a) dismiss with prejudice any and all claims it has asserted against the Secured Lender in any pending litigation; and (b) dismiss or  withdraw all pending appeals in litigation it has asserted against the Secured Lender.

20

## ARTICLE XI

## Exculpation And Limitation Of Liability

11.1    Neither the Debtor, nor its member, officers, professionals or agents, or the Disabusing Agent shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the Debtor's Bankruptcy Case, including without limitation the negotiation, execution or implementation of this Plan or documents ancillary to the Plan, the Disclosure Statement, the solicitation of votes for and pursuit of confirmation of the Plan, the property or funds to be sold or distributed pursuant to the Plan, the consummation of this Plan, and all decisions, actions, inactions and alleged negligence relating to any of the foregoing except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

## ARTICLE XII

## Transfer Tax Exemption

12.1    The Sale of the Property pursuant to the Plan shall be exempt from New York State and New York City transfer taxes and stamp taxes pursuant to Bankruptcy Code § 1146.

## ARTICLE XIII

## General Provisions

13.1    The Debtor and Secured Lender reserve the right to modify the Plan prior to the Confirmation Date and it thereafter may modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, provided that such modifications are set forth in a writing signed by both the Debtor and Secured Lender.

13.2    Except as otherwise provided in the Plan, the Disbursing Agent shall make all Cash distributions under the Plan.

#152450002_v1

13.3    The Debtor shall continue to maintain insurance on the Property until title to the Property is transferred pursuant to the terms of the Plan.

13.4    All objections to Disputed Claims shall be commenced, filed or asserted within thirty (30) days after the Confirmation Date.

13.5    If any person entitled to receive Cash under this Plan cannot be located within a reasonable time after the Effective Date, such Cash shall be set aside and held in a segregated non-interest bearing fund to be maintained by the Disbursing Agent. If the person entitled to such Cash is located within six (6) months after the Effective Date, such Cash shall be paid and distributed to such person. If, however, such person cannot be located within six (6) months from the Effective Date, such Cash (together with any interest actually earned thereon less any amounts that may be payable in respect of taxes, if any, imposed on the interest so earned) shall be distributed by the Disbursing Agent to the Secured Lender.

13.6    The Debtor's post-confirmation management shall consist of Secured Loan Holdings, LLC, who shall continue to serve as the Debtor's sole member and manager without compensation. The Debtor is authorized to take all actions necessary for the consummation of the Plan and the Closing of the Sale.

## ARTICLE XIV

### Retention of Jurisdiction

14.1    The Bankruptcy Court shall retain exclusive jurisdiction of this case as long as necessary for the following purposes:

(a)    To determine any and all objections to the allowance, disallowance or subordination of Claims or any controversy as to the classification of Claims.

(b)    To determine any and all applications for professional and similar fees and for the reimbursement of disbursements and expenses.

22

#152450002_v1

(c)     To liquidate any disputed, contingent, or unliquidated Claims,

(d)     To determine any and all pending motions and applications for assumption or rejection of executory contracts and leases and the allowance and classification of any Claims resulting from the rejection of executory contracts and leases.

(e)     To determine any and all motions, applications, adversary proceedings, contested and litigated matters or such other matters over which the Bankruptcy Court has jurisdiction prior to the Confirmation Date, including the enforcement, prosecution, litigation, settlement and/or other disposition of claims and counterclaims of the Debtor and to recover preferences and fraudulent transfers.

(f)     To enforce the provisions of, and resolve any and all disputes under or pertaining to the Plan, or the Debtor's bankruptcy case.

(g)     To modify the Plan or to correct any defect, cure any omission or reconcile any inconsistency in the Plan or in the order of the Bankruptcy Court confirming the Plan, or to enter such orders as may be necessary to effectuate the terms and conditions of the Plan to the extent authorized by the Bankruptcy Code as may be necessary to carry out the purpose and intent of the Plan.

(h)     To determine such other matters as may be provided for in the order of the Bankruptcy Court confirming the Plan or as may be authorized under the provisions of the Bankruptcy Code.

(i)     To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Bankruptcy Case;

(j)     To hear and determine any and all controversies and disputes arising under, or in connection with, the Plan or the order confirming the Plan;

(k)     To adjudicate all controversies concerning the classification of any Claim;

(l)     To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

(m)     To adjudicate all Claims to a security or ownership interest in any property of the Debtor or in any proceeds thereof;

(n)     To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken during the pendency of this bankruptcy case;

(o)     To recover all assets and properties of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Debtor as at the Confirmation Date;

(p)     To determine all questions and disputes regarding recovery of and entitlement to the Debtor's assets and determine all claims and disputes between the Debtor and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

(q)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

(r)     To enter an order or final decree closing and terminating the Bankruptcy Case; and

(s)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof and/or confirming the Plan.

## ARTICLE XV

## <u>Rentention of Claims and Causes of Action</u>

15.1   Notwithstanding confirmation of the Plan, the Debtor shall retain all claims and causes of action that it owns, including without limitation, any claims or causes of action under Chapter 5 of the Bankruptcy Code, and may commence and assert such claims post-confirmation. For the avoidance of any doubt this includes the Debtor's retention of all claims and causes of action against Michal Uhr, WHP Equities, LLC, Jonathan Rubin, and any and all of their affiliates or insiders.

Dated: Manhasset, New York
          November 12, 2021

                                        Law Offices of Vincent M. Lentini
                                        Attorneys for the Debtor
                                        1129 Northern Blvd., Suite 404
                                        Manhasset, New York 11030
                                        (516) 228-3214
                                        vincentmlentini@gmail.com

24

#152450002_v1

By: /s/ Vincent M. Lentini
        Vincent M. Lentini

HOLLAND & KNIGHT LLP
Attorneys for 4 AIF Sycamore 2, LLC
900 Third Avenue
New York, New York 10022
(212) 751-3001
bruce.zabarauskas@hklaw.com

By: /s/ Bruce J. Zabarauskas
        Bruce J. Zabarauskas (BZ-7085)

# Exhibit 1 To The Plan

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11
                                         :
893 4th AVE LOFTS, LLC,,                  :        Case No. 21-41367-JMM
                                         :
                                         :
                   Debtor.               :
                                         :
-------------------------------------------------------------x
```

## NOTICE OF SALE OF REAL PROPERTY

Pursuant to an order of the United States Bankruptcy Court for the Eastern District of New York, dated December ___, 2021 (the "Confirmation Order"), confirming the Second Amended Chapter 11 Liquidating Plan for 893 Fourth Ave Lofts LLC filed by 893 4th Ave Lofts LLC and 5 AIF Sycamore 2, LLC (the "Plan"), the real property and improvements situated thereon at 893 4th Ave, Brooklyn, New York (Block 685, Lot 4) (the "Property") shall be sold at auction on February 15, 2022 either at the Law Offices of Vincent Lentini, 1129 Northern Blvd., Suite 404, Manhasset, New York 11030, or at the option of 893 4th Ave Lofts LLC, by webex, Zoom or other streaming video service. The auction will be conducted in accordance with the provisions of the Plan.

The Property will be sold, as is, free and clear of all claims, liens, encumbrances, equities and interests pursuant to sections 363(b), 363(f), 363(k), 1123(b)(4) and 1129 of the Bankruptcy Code, provided however that at the closing of the sale the Purchaser shall be required to pay all outstanding taxes constituting a lien on the Property (including without limitation county and local real estate taxes, school taxes and any special district taxes or charges), unpaid water and sewer charges and any other charges owed to any governmental entities or units which are a lien or charge on the Property. Consistent with section 1146(c) of the Bankruptcy Code, the sale and transfer of the Property shall be exempt under any law imposing a stamp or similar tax pursuant to § 1146 of the Bankruptcy Code.

**Only "Qualified Bidders" as defined in the Plan, and the Secured Lender as defined in the Plan, may bid at the auction. Among the requirements for becoming a Qualified Bidder are that the bidder submit an initial written bid no later than February 8, 2022 to Vincent Lentini, Esq. as Disbursing Agent under the Plan, along with a ten percent (10%) downpayment and an executed purchase and sale agreement, substantially in the form annexed as Exhibit 2 to the Plan. A complete list of the requirements as to how to become a Qualified Bidder and the rules governing the auction, are contained in the Plan and Confirmation Order. Copies of the Confirmation Order and the Plan, may be obtained free of charge by making a written request to either: (i) counsel for 893 4th Ave Lofts LLC: Vincent Lentini, Law Offices of Vincent Lentini, 1129 Northern Blvd., Suite 404, Manhasset, New York 11030, vincentmlentini@gmail.com, or (ii) counsel for the Secured Lender: Bruce**

**J. Zabarauskas, Holland & Knight, LLP, 1722 Routh Street, Suite 1500, Dallas, Texas 75201, bruce.zabarauskas@hklaw.com.**

The legal description of the Property is as follows:

All that certain tot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, State of New York, bounded and described as follows:
BEGINNING at a point on the easterly side of Fourth Avenue, distant 100 feet southerly from the corner formed by the intersection of the easterly side of Fourth Avenue with the southerly side of 33rd Street; RUNNING THENCE. easterly parallel with 33rd Street, and part of the distance through a party wall, 97 feet; THENCE southerly, parallel with Fourth Avenue, 26 feet 8 inches; THENCE westerly again parallel with 33rd Street and part of the distance through a party wall, 97 feet to the easterly side of Fourth Avenue; THENCE northerly along the easterly side of Fourth Avenue, 28 feet 6 inches to the point or
place of BEGINNING.

Law Offices of Vincent M. Lentini
Attorneys for 893 4th Ave Loft LLC
1129 Northern Blvd., Suite 404
Manhasset, New York 11030
(516) 228-3214
vincentmlentini@gmail.com

By: /s/ Vincent M. Lentini
        Vincent M. Lentini

# Exhibit 2 To The Plan

<u>Form of Sales Contract</u>

AGREEMENT OF PURCHASE AND SALE

between

**893 4TH AVE LOFTS, LLC, a**
**New York limited liability company**

as Seller

and

_____, a
_____,
as Purchaser

Dated as of _____ \_\_\_, 202[\_]

AGREEMENT OF PURCHASE AND SALE (the "Agreement") dated as of January ___, 2022 between 893 4TH AVE LOFTS, LLC, a New York limited liability company, having an address at _____ ("Seller"), and _____ a _____ having an address at _____ ("Purchaser").

Seller and Purchaser hereby agree as follows:

1.    <u>Sale and Purchase.</u> Subject to the terms of this Agreement and the Liquidating Plan For 893 Fourth Ave Lofts, LLC Filed By 893 Fourth Ave Lofts LLC And 5 AIF Sycamore 2, LLC (as may be amended, the "Plan"), Seller shall sell and convey to Purchaser and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this Agreement:

(a)    the parcel of land more particularly described in <u>Schedule 1</u> attached hereto (the "Land");

(b)    any buildings and improvements situated on the Land (the "Improvements");

(c)    all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land and all other appurtenances to the Land and Improvements, and all right, title and interest of Seller in and to any award made or to be made in lieu thereof and in and to any unpaid award for damages to the Land and Improvements by reason of change of grade of any street ("Appurtenances");

(d)    all warranties, guaranties, licenses, permits and other rights both tangible and intangible, relating to the Land and the Improvements (the "Miscellaneous Property").

The Land, the Improvements, the Appurtenances, and the Miscellaneous Property are hereinafter collectively referred to as the "Premises".

2.    <u>Purchase Price.</u> Subject to the provisions of Section 16(b), Purchaser will pay Seller for the Premises $_____(the "Purchase Price") payable as follows:

(a)    **$ [TEN PER CENT OF PURCHASE PRICE UNLESS 5 AIF SYCAMORE 2, LLC IS THE PURCHASER]** (the "Deposit") shall be paid to Seller upon the execution of this Agreement in cash or official bank, certified or cashier's check drawn on and payable by a New York branch of a commercial bank (collectively, "Acceptable Funds") and shall be held in escrow pursuant to Section 3 hereof; and

(b)    **$ [NINETY PER CENT OF PURCHASE PRICE UNLESS 5 AIF SYCAMORE 2, LLC IS THE PURCHASER]** to be paid on the Closing Date in Acceptable Funds.

3.    [Subject to the provisions of Section 16(b): <u>Escrow of Deposit.</u> (a) The Deposit has been delivered to Seller. Seller acknowledges its receipt of the Deposit and agrees to hold the Deposit pursuant to the provisions of this Section 3.]

(b)    The Deposit shall be deposited in an account with a federally insured banking or savings institution.

(c)    (i) At the Closing, the Deposit shall be disbursed by Seller in accordance with the Plan.

(ii)    If the Closing is not held by reason of Purchaser's default the Deposit, together with all interest earned thereon, shall be disbursed by Seller in accordance with the Plan.

(iii)    If the Closing is not held by reason of Seller's default or by reason of a failure of one or more of the conditions to the Closing as specified in this Agreement, the Deposit, together with all interest earned thereon, if any, shall be paid to Purchaser.

(d)    The tax identification numbers of Seller and Purchaser are as follows:

Seller:
Purchaser:

4.    <u>Title.</u> At Closing, title to the Premises shall be transferred to Purchaser "as is" and subject to all agreements, covenants, restrictions, conditions, reservations and other matters of record, violations, zoning and other rules and regulations, such state of facts as an accurate survey of the Premises would show, rights of redemption and rights of any tenants in possession or under any leases. As provided for in the Plan, the Premises shall be transferred to Purchaser at Closing free and clear of all other liens, upon payment of the Purchase Price and the Purchaser's payment at Closing of all outstanding taxes constituting a lien on the Premises (including without limitation, county and local real estate taxes, school taxes and any special district taxes), unpaid water and sewer charges and any other charges owed to governmental entities or units which are a lien or charge on the Premises.

5.    <u>Representations and Warranties of Seller.</u> Seller represents and warrants to Purchaser that Seller has the authority to execute, deliver and perform its obligations under this Agreement pursuant to the Plan.

6.    <u>Representations and Warranties of Purchaser.</u> (a) Purchaser represents and warrants to Seller as follows:

(i)    <u>Organization, Execution and Power.</u> Purchaser is duly formed and in good standing under the laws of the State of [_____]. Purchaser has full power to execute, deliver and carry out the terms and provisions of this Agreement and has taken all necessary action to authorize the execution, delivery and performance of this Agreement. Neither the execution and

delivery of this Agreement by Purchaser, nor the incurrence by it of the obligations herein set forth, nor the consummation by it of the transactions herein contemplated, nor compliance by it with the terms of this Agreement will conflict with or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, the articles of incorporation or by-laws of Purchaser or any bond, note or other evidence of indebtedness, contract, indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which Purchaser is a party or by which any of Purchaser's properties may be bound, or, to the best of Purchaser's knowledge after reasonable inquiry, any constitutional provision or statute or any order, rule or regulation of any court or governmental agency having jurisdiction over Purchaser or any of its activities or property.

(ii)    <u>Inspection.</u> Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof and shall accept the Premises "as is" and in its present condition, subject to reasonable wear and tear.

(iii)    <u>Examination.</u> Before entering into this Agreement, Purchaser has made such examination of the operation, income and expenses of the Premises, the status of title to the Premises and all other matters affecting or relating to this transaction as Purchaser has deemed necessary. In entering into this Agreement, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, oral or written, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller which are not expressly set forth in this Agreement.

(iv)    <u>ERISA.</u> Purchaser is not acquiring the Premises with the assets of an employee benefit plan (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended).

(v)    <u>PATRIOT Act</u>. Purchaser represents to Seller that neither it nor any of its constituents have engaged in any dealings or transactions, directly or indirectly, (a) in contravention of any U.S., international or other money laundering regulations or conventions, including, without limitation, the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001, Trading with the Enemy Act (50 U.S.C. § I et seq., as amended), or any foreign asset control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) or any enabling legislation or executive order relating thereto, or (b) in contravention of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56, the "<u>USA PATRIOT ACT</u>"), Executive Order No. 13224 dated September 24, 2001 issued by the

President of the United States (Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism), as may be amended or supplemented from time to time ("Anti-Terrorism Order") or on behalf of terrorists or terrorist organizations, including those persons or entities that are included on any relevant lists maintained by the United Nations, North Atlantic Treaty Organization, Organization of Economic Cooperation and Development, Financial Action Task Force, U.S. Office of Foreign Assets Control, U.S. Securities & Exchange Commission, U.S. Federal Bureau of Investigation, U.S. Central Intelligence Agency, U.S. Internal Revenue Service, or any country or organization, all as may be amended from time to time. Neither Purchaser nor any of its constituents (i) are or will be conducting any business or engaging in any transaction with any person appearing on the U.S. Treasury Department's Office of Foreign Assets Control list of restrictions and prohibited persons, or (ii) are a person described in Section 1 of the Anti-Terrorism Order, and to the best of Purchaser's knowledge, respectively neither Purchaser nor any of its affiliates have engaged in any dealings or transactions, or otherwise been associated with any such person. The provisions of this subsection shall survive the Closing or earlier termination of this Agreement.

(b)     If any of the foregoing representations and warranties shall not be true and accurate in any material respect so as to prevent Purchaser from performing its obligations under this Agreement (and the same is not waived as provided for in Section 8 hereof), Seller's sole right and remedy shall be to terminate this Agreement on or prior to the Closing, retain the Deposit and all interest earned on the Deposit as liquidated damages and to disburse the Deposit and such interest in accordance with the Plan.

7.     Covenants of Purchaser. Purchaser hereby covenants with Seller that all actions required pursuant to this Agreement which are necessary to effectuate the transactions contemplated herein will be taken promptly and in good faith by Purchaser, and Purchaser shall furnish Seller with such documents or further assurances as Seller may reasonably require.

8.     Conditions Precedent to Seller's Obligations to Close. Seller's obligation to consummate the Closing hereunder is expressly conditioned on the satisfaction, at or before the time of the Closing hereunder or such earlier date as is specified below, of each of the following conditions (any one or more of which may be waived, in whole or in part, by Seller at Seller's option):

(a)     All of the representations and warranties of Purchaser contained in this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects on the Closing Date with the same effect as if made on and as of such date.

(b)     A Bankruptcy Court Order confirming the Plan shall have been issued by a court of competent jurisdiction, which order shall not be stayed as of the date of the Closing (the "Confirmation Order").

(c)      Pursuant to the Confirmation Order, the Purchaser is deemed a good faith purchaser within the meaning of Bankruptcy Code Section 363(m).

(d)      Purchaser shall have performed, observed, and complied with all covenants, agreements, and conditions required by this Agreement to be performed, observed, and complied with on its part prior to or as of Closing hereunder.

9.      <u>Conditions Precedent to Purchaser's Obligations to Close.</u> Purchaser's obligations hereunder (including, without limitation, its obligation to purchase and accept the Premises and pay the Purchase Price) are expressly conditioned on the satisfaction, at or before the time of Closing hereunder or such earlier date as is specified below, of each of the following conditions (any one or more of which may be waived, in whole or in part, by Purchaser at Purchaser's option):

(a)      All of the representations and warranties of Seller contained in this Agreement shall have been true and correct when made, and shall be true and correct on the Closing Date with the same effect as if made on and as of such date.

(b)      Seller shall have performed, observed, and complied with all covenants, agreements, and conditions required by this Agreement to be performed, observed, and complied with on its part prior to or as of Closing hereunder.

(c)      All instruments and documents required on the part of Seller to effect this Agreement and the transactions contemplated hereby shall be delivered to Purchaser and shall be in form and substance reasonably satisfactory to Purchaser and its counsel.

(d)      The physical condition of the Premises shall be substantially the same on the Closing Date as on the date hereof, ordinary wear and tear excepted.

10.      Closing. (a) The transfer of title (the "Closing") to the Premises pursuant to this Agreement shall occur at 10:00 A.M. on [DATE WITHIN 14 DAYS AFTER DATE OF THIS AGREEMENT OR EARLIER AT PURCHASER'S OPTION] unless stayed by an order of a court of competent jurisdiction, in the offices of the Disbursing Agent (as defined in the Plan) TIME BEING OF THE ESSENCE AS TO PURCHASER'S OBLIGATIONS UNDER THIS AGREEMENT. The day on which the Closing actually occurs is referred to herein as the Closing Date. Nothing herein contained shall be deemed to create a financing or any other contingency or to condition Purchaser's obligations hereunder on Purchaser's ability to obtain financing or any other event or condition, except as expressly set forth herein.

(a)      At or before Closing, Purchaser shall receive from Seller:

(i)      a good and sufficient deed (the "Deed");

(ii)      such additional documentation as shall be necessary in order to convey to Purchaser, Seller's interests in the Premises;

(iii)    to the extent available, all records and files related to the ownership, management and operation of the Premises;

(iv)    to the extent available, all keys to all entrance doors to, and equipment and utility rooms located in, the Premises; and

(v)    possession of the Premises in the condition required by this Agreement.

(b)    At or before Closing, Seller shall receive from Purchaser:

(i)    the amount specified in Section 2(b) in Acceptable Funds; and

(ii)    Such other instruments and documents necessary to consummate the transaction contemplated hereby, including, but not limited to, signed counterparts of the appropriate New York City and New York State real property transfer tax forms.

11.    <u>Default, Liquidated Damages. etc.</u> (a) If Purchaser shall default in the performance of its obligations under this Agreement to purchase the Premises, then the Deposit shall be retained as liquidated damages and this Agreement shall become void and be of no further force or effect, and no party hereto shall thenceforth have any claim of any nature against the other party hereto.

(b)    If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this Agreement, Purchaser's sole right shall be to terminate and cancel this Agreement, whereupon Seller shall return to Purchaser the Deposit, with any accrued interest thereon, and this Agreement shall become void and be of no further force or effect, and no party hereto shall thenceforth have any claim of any nature against the other party hereto.

12.    <u>Notices, Etc.</u> All notices, consents, approvals and other communications under this Agreement shall be in writing and shall be deemed given the third business day after mailing by one party by registered or certified United States mail, postage prepaid and return receipt requested, to the other party addressed as follows:

If to Seller:

[

Attention: [        ]

with a copy to:

[

Attention: [        ]

If to Purchaser:

        NY # 1176308 v 2

[

      Attention: [              ]

with a copy to:

[

      Attention: [              ]

Either party may, from time to time, specify as its address for purposes of this Agreement any other address upon the giving of 10 days' notice thereof to the other party.

      13.    <u>Integration.</u> All understandings and agreements between the parties with respect to the subject matter of this Agreement are merged in this Agreement, which alone fully expresses their agreement with respect to such subject matter.

      14.    <u>Severability.</u> If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

      15.    <u>No Assignment.</u> Except as provided in Section 16(b) of this Agreement, this Agreement may not be assigned by either party.

      16.    <u>Governing Law: Special Provisions if 5 AIF Sycamore 2, LLC or its nominee, designee or assignee is Purchaser</u>. (a) This Agreement shall be governed by and construed in accordance with Title 11 of the United States Code and, to the extent applicable to contract matters, the laws of the State of New York. Any action or proceeding involving this Agreement shall only be commenced in the Bankruptcy Court for the Eastern District of New York. Service of any summons and complaint or other process in any such action or proceeding may be made by certified mail directed to Seller or Purchaser, as applicable, at the address above set forth, personal service being hereby waived.

      (b)    Notwithstanding any provisions of this Agreement to the contrary, in the event the Purchaser is 5 AIF Sycamore 2, LLC (or its nominee or designee or assignee), all obligations of Purchaser under this Agreement shall be governed by and subject to the terms and conditions of the Plan, including without limitation provisions of the Plan which provide that 5 AIF Sycamore 2, LLC (or its nominee or designee or assignee): (i) shall not be required to post the Deposit and (ii) may pay all or a portion of the Purchase Price by discharging all or a portion of its secured claim against Seller.

      17.    <u>DISCLAIMERS AND LIMITATIONS</u>. PURCHASER EXPRESSLY UNDERSTANDS, ACKNOWLEDGES AND AGREES THAT THE CONVEYANCE OF THE PREMISES SHALL BE MADE BY SELLER TO PURCHASER ON AN "AS IS, WHERE IS" BASIS AND WITH ALL FAULTS, AND PURCHASER ACKNOWLEDGES THAT

NY # 1176308 v 2

PURCHASER HAS AGREED TO BUY THE PREMISES IN ITS PRESENT CONDITION AND THAT PURCHASER IS RELYING SOLELY ON ITS OWN EXAMINATION AND INSPECTIONS OF THE PREMISES AND NOT ON ANY STATEMENTS OR REPRESENTATIONS MADE BY SELLER OR ANY AGENTS OR REPRESENTATIVES OF SELLER.  ADDITIONALLY, PURCHASER HEREBY ACKNOWLEDGES THAT SELLER MAKES NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING BUT IN NO WAY LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE PREMISES OR ANY PORTION THEREOF, OR WITH RESPECT TO THE ECONOMICAL, FUNCTIONAL, ENVIRONMENTAL OR PHYSICAL CONDITION, OR ANY OTHER ASPECT, OF THE PREMISES.  SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, OR CONCERNING: (i) THE NATURE AND CONDITION OF THE PREMISES OR ANY PART THEREOF, INCLUDING BUT NOT LIMITED TO ITS WATER, SOIL, OR GEOLOGY, OR THE SUITABILITY THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON, OR ANY IMPROVEMENTS PURCHASER MAY ELECT TO CONSTRUCT THEREON, OR ANY INCOME TO BE DERIVED THEREFROM, OR ANY EXPENSES TO BE INCURRED WITH RESPECT THERETO, OR ANY OBLIGATIONS OR ANY OTHER MATTER OR THING RELATING TO OR AFFECTING THE SAME; (ii) THE ABSENCE OF ASBESTOS OR ANY ENVIRONMENTALLY HAZARDOUS SUBSTANCES ON, IN OR UNDER THE PREMISES OR ON, IN OR UNDER ANY PROPERTY ADJACENT TO, IN THE VICINITY OF OR ABUTTING THE PREMISES; (iii) THE MANNER OF CONSTRUCTION OR CONDITION OR STATE OF REPAIR OR LACK OF REPAIR OF ANY IMPROVEMENTS; AND (iv) THE COMPLIANCE OF THE PREMISES OR THE OPERATION OF THE PREMISES OR ANY PORTION THEREOF WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER BODY; AND (v) THE NATURE OR EXTENT OF ANY EASEMENT, RESTRICTIVE COVENANT, RIGHT-OF-WAY, LEASE, POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHER SIMILAR MATTER PERTAINING TO THE PREMISES, OR PORTION THEREOF.

18.    <u>Damage or Destruction</u>. (a) If all or any part of the Premises is damaged by fire or other casualty occurring on or after the date hereof and prior to the Closing Date, whether or not such damage affects a material part of the Premises, then neither party shall have the right to terminate this Agreement and the parties shall nonetheless consummate this transaction in accordance with this Agreement, without any abatement of the Purchase Price or any liability or obligation on the part of Seller by reason of such destruction or damage. In such event, Seller shall pay over to Purchaser the net amount of the insurance proceeds collected, or, if any proceeds have not been collected, Seller shall assign to Purchaser all its right, title and interest in and to the same and, in either such case, Purchaser shall receive a credit against the cash due at Closing for the amount of the deductible on such casualty insurance policy less any amounts expended by Seller to collect any such insurance proceeds or to remedy any unsafe conditions at the Premises, in all cases in no event to exceed the amount of the loss.

(b)    The parties understand and agree that the provisions of this Agreement shall govern and supersede the provision of any law applicable to the Premises governing the effect of fire or

8

NY # 1176308 v 2

other casualty in contracts for real property, including but not limited to Section 5-1311 of the General Obligations Law of the State of New York.

19.    <u>Condemnation</u>. If, prior to the Closing Date, all or substantially all of the Premises is taken (other than a temporary taking), or if Seller shall receive an official notice from any governmental authority having eminent domain power over the Premises of its intention to take, by eminent domain proceeding, all or substantially all of the Premises (a "<u>Taking</u>"), then this Agreement shall automatically terminate. Upon termination pursuant to the preceding sentence, the obligations of each party to the other shall terminate without further liability hereunder or otherwise, except that the Deposit and any interest thereon shall be refunded by Seller to Purchaser. In the event of a Taking of less than all or substantially all of the Premises, Seller and Purchaser shall each have the option, exercisable within five (5) days after receipt of notice of such Taking, time being of the essence, to terminate this Agreement by delivering notice of such termination to the other party, whereupon the Deposit shall be returned to Purchaser and this Agreement shall be deemed canceled and of no further force or effect, and neither party shall have any further rights or liabilities against or to the other except pursuant to the provisions of this Agreement which are expressly provided to survive the termination hereof. If a Taking shall occur and neither party shall timely elect to terminate this Agreement, then Purchaser and Seller shall consummate this transaction in accordance with this Agreement, without any abatement of the Purchase Price or any liability or obligation on the part of Seller by reason of such Taking; provided, however, that Seller shall, on the Closing Date, (A) assign and remit to Purchaser the net proceeds of any award or other proceeds of such Taking which may have been collected by Seller as a result of such Taking less the reasonable expenses incurred by Seller in connection with such Taking, or (B) if no award or other proceeds shall have been collected, deliver to Purchaser an assignment of Seller's right to any such award or other proceeds which may be payable to Seller as a result of such Taking and Purchaser shall reimburse Seller for the reasonable expenses incurred by Seller in connection with such Taking. The provisions of this <u>Section 19</u> supersede any law applicable to the Premises governing the effect of condemnation in contracts for real property.

20.    <u>Amendments and Waivers.</u> Neither this Agreement nor any of the terms hereof may be terminated, amended or waived orally, but only by an instrument in writing signed by the party against which enforcement of the termination, amendment or waiver is sought.

21.    <u>Interpretation.</u> The table of contents and the headings of the various subdivisions of this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. All pronouns shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. Capitalized terms not otherwise defined herein shall have the meanings assigned to such terms in the Plan.

22.    <u>Counterparts.</u> This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement to produce or account for more than one such counterpart.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

SELLER:

NY # 1176308 v 2

527055.000003 27278176.1

**893 4TH AVE LOFTS, LLC**,
a New York limited liability company

By: _____
    Title:_____

PURCHASER:

[                                                                             ]

By:_____
Title:

10

527055.000003 27278176.1

<u>Description of Land</u>